**Elizabeth J. Inayoshi, OSB 133929**
Law Office of Elizabeth J. Inayoshi LLC
330 NE Lincoln Street, Suite 200
Hillsboro, OR 97124
Voice: (971) 232-1230
Fax: (503) 214-7169
elizabeth@ejilaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DAVID RABOIN,** an individual,<br><br>Plaintiff,<br><br>v.<br><br>**WORKDAY, INC.,** a foreign business corporation; **KAMI AMES**, an individual; **LAQUINTA BUFORD-POPLAR**, an individual; and **JAZSMINE GORDON**, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**1.  Whistleblower Retaliation –**<br>  **- 42 USC §2000e-3(a)/ 41 U.S.C. § 4712/**<br>  **41 CFR § 60-1.32(a)(3)**<br>  **- ORS 659A.199**<br><br>**2.  Age Discrimination – ORS 659A.030(1)(a)**<br><br>**3.  Aiding and Abetting – ORS 659A.030(1)(g)**<br><br>**DEMAND FOR JURY TRIAL** |

///
///
///
///
///

1   COMPLAINT

Plaintiff David Raboin ("Mr. Raboin" or "Plaintiff"), through his counsel, makes the following complaint against defendant Workday, Inc. ("Workday" or "Defendant"), alleging as follows:

## INTRODUCTION

Plaintiff brings this action for monetary and injunctive relief, including attorneys' fees and costs, to redress (1) his discriminatory and retaliatory discharge by Workday for opposing and good-faith reporting of violations of the regulations of the Office of Federal Contract Compliance Program (OFCCP), in violation of 42 U.S.C. §2000e-3(a), 41 U.S.C. § 4712, 41 CFR § 60-1.32(a)(3), and ORS 659A.199; (2) Workday's discriminatory discharge of him because of his age while retaining far younger but less successful employees during its reduction in force, and (3) Mr. Raboin's management's aiding and abetting of Workday's discriminatory and retaliatory actions.

## NATURE OF THE ACTION

## JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION

1.

This court has jurisdiction of Plaintiff's claims for violation of 42 U.S.C. §2000e-3(a), 41 U.S.C. § 4712, 41 CFR § 60-1.32(a)(3), ORS 659A.030(1)(f) and (g) and ORS 659A.199.

2.

Jurisdiction is proper over the Plaintiff's claims arising under the laws of the United States under 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds $75,000 and defendant is a citizen of Delaware, while Plaintiff is a citizen of Oregon.

///

2  COMPLAINT

3.

Venue is proper with the Portland District of the U.S. District Court of Oregon pursuant to 28 U.S.C. § 1391(b)(2) and LR 3-2 because a substantial part of the events giving rise to the claim occurred in Washington County, State of Oregon, which is within this judicial district.

4.

Plaintiff's cause of action arose with his termination on January 31, 2023. He filed a complaint with the Office of Federal Contract Compliance Programs on February 9, 2023.  On February 17, 2023, he filed a complaint with the Oregon Bureau of Labor and Industries (BOLI). The OFCCP transferred the complaint to the U.S. Equal Employment Opportunity Commission (EEOC) on March 3, 2023.  Mr. Raboin signed the charge with the EEOC on May 25, 2023, within the 180 days required by 42 U.S.C. § 2000e-5e(1) and more than 60 days after proceedings had been commenced with the Oregon agency, as required by 42 US.C. §2000e-5(c).  Through the work share agreement between the EEOC and BOLI, that charge was also immediately concurrently filed with BOLI on May 25, 2023. On June 13, 2023, the EEOC ended its investigation with no determination, indicating to Mr. Raboin verbally that the OFCCP should have investigated a retaliation charge under the OFCCP. It nonetheless issued Mr. Raboin a Right-To-Sue notice which gave him 90 days, or until September 11, 2023, to file suit in federal court. Mr. Raboin has exhausted his administrative remedies.

///
///
///
///
///
///
///
///

3   COMPLAINT

**PARTIES**

5.

Plaintiff Mr. Raboin is a natural person and at all times material to this action resided in the City of Beaverton, Washington County, State of Oregon. He was employed by defendant Workday in the City of Beaverton, Washington County, State of Oregon. At all times material to this action, Mr. Raboin was an "employee" within the meaning of 42 U.S.C.§2000e(f) and a "person" within the meaning of ORS 659A.001(9)(a).

6.

Defendant Workday is, and at all times material to this action was, a foreign business corporation registered in Oregon, originally registered as a corporation in Delaware, with its principal place of business in the city of Pleasanton, Alameda County, State of California. Its place of business in the State of Oregon is in the City of Beaverton, Washington County. Workday provides unified finance, human resources and student/faculty lifecycle management cloud applications designed for business organizations. At all times material to this action, Workday employed more than 15 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, making it an employer within the meaning 42 U.S.C. §2000e(b) and ORS 659A.001(4)(a). Federal regulation 41 CFR § 60-3.16(G) defines "employer" for the purposes of the Uniform Guidelines on Employee Selection Procedures 941 CFR Part 60-3 as "any employer subject to the provisions of the Civil Rights Act of 1964, as amended***and any Federal contractor or subcontractor**covered by Executive Order 11246, as amended." At all times material to this action, Workday, Inc. was a federal contractor/employer within the meaning of 41 CFR § 60-3.16(G).

4   COMPLAINT

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

7.

Defendant Kami Ames is a natural person and at all times material to this action, per knowledge and belief, resided in the State of California and was employed by defendant Workday in the State of California.   At all times material to this action, Ms. Ames, as the Director, Production and Technology Talent Acquisition and, as an agent of Workday, Inc., was an employer within the meaning of 42 U.S.C. §2000e(b) and ORS 659A.001(4)(a).

8.

Defendant Laquinta Buford-Poplar is a natural person and at all times material to this action, per knowledge and belief, resided in the State of Michigan and was employed by defendant Workday. in the State of Michigan.   At all times material to this action, Ms. Buford-Poplar, was a Talent Acquisition Manager and, as an agent of Workday, Inc., was an employer within the meaning of 42 U.S.C. §2000e(b) and ORS 659A.001(4)(a).

9.

Defendant Jazsmine Gordon is a natural person and at all times material to this action, per knowledge and belief, resided in the State of Georgia and was employed by defendant Workday in the State of Georgia as a "Senior People Consultant" and as a person who has the responsibility to investigate, discover, or address misconduct, was a person covered by 41 U.S.C. § 4712(a)(2)(G).

///
///
///
///
///
///
///
///

5   COMPLAINT

### FACTUAL ALLEGATIONS

10.

Mr. Raboin has more than 20 years' experience in recruiting, primarily for high technology companies. He has a bachelor's degree in psychology and completed an additional program in Industrial/Organizational Psychology. He was a successful and sought-after Senior Technical Recruiter. After working on the east coast for Dominion Enterprises, he left to return to the west coast. As with many recruiters, employers generally hired him as a contractor. A number of companies hired him to staff up particular projects or new divisions. In some contracting positions, he had opportunities to become a regular W-2 employee. At Symantec, for example, they had begun the process of making him a regular employee; however, Broadcom bought out the company and chose not to move forward with that offer. While working for Intel, Microsoft recruited him. At that time Microsoft terminated all contractors after 2 years. At that point, Mr. Raboin went to work for a start-up, SoundHound. SoundHound had significant layoffs due to the pandemic, including Mr. Raboin. Shortly thereafter, eBay hired him.

11.

Workday approached Mr. Raboin via LinkedIn in May 2021while he was working for eBay, to recruit him to support its analytics team as a regular employee. Although Mr. Raboin was not actively seeking a new role, he responded to the message expressing interest. His experience aligned well with Workday's requirements, particularly because he had recent experience supporting eBay's Core Technology organization which closely aligned with Workday's analytics roles. Workday made him a verbal offer of $136,000 salary plus additional restricted stock units and a variable compensation (bonus) program. Mr. Raboin enjoyed his team and his manager at

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

eBay, so debated whether to leave for Workday. To secure him, Workday increased its base salary offer to him to $142,500 and added a $10,000 signing bonus. Mr. Raboin accepted the offer and starting work at Workday on June 28, 2021, as a Sr. Talent Acquisition Partner reporting directly to Kami Ames, the Director, Product and Technology Talent Acquisition.

12.

At the time Workday recruited Mr. Raboin, federal government agencies made up almost 30% of Workday's revenue, making Workday subject to the Office of Federal Contract Compliance Programs (OFCCP) statutes and regulations. The OFCCP "holds those who do business with the federal government (contractors and subcontractors) responsible for complying with the legal requirement to take affirmative action and not discriminate on the basis of race, color, sex, sexual orientation, gender identity, religion, national origin, disability, or status as a protected veteran"[1] and requires employers "to provide equal employment to all employees and job applicants."[2] The OFCCP has rigorous requirements for its vendors, with an audit process to verify compliance, and significant fines and the potential for blacklisting as a federal vendor for non-compliance. Consequently, Workday made a significant change to its recruiting process to become compliant with the requirements of the OFCCP.

13.

In his first week at Workday, Mr. Raboin attended an IHRW Learning Lab for Recruiters, led by Denise Williams, a Senior Human Resources Compliance Program Manager at Workday. The training focused on OFCCP requirements, especially the need to specify "basic qualifications"

---

[1] https://www.dol.gov/agencies/ofccp/about , last visited August 19, 2023.
[2] 41 CFR 60-1.4

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

("BQs") in each requisition and only move forward those candidates in the hiring process who met those BQs. By delineating the BQs in the requisitions for the jobs, Workday could advance fair and equitable hiring processes per the OFCCP requirements. Recognizing both the legal requirements and the equitable aspects of the approach, Mr. Raboin immediately began to use the training in his day-to-day work.

14.

Approximately six weeks after Workday hired Mr. Raboin, Workday hired Laquinta Buford-Poplar as a Talent Acquisition Manager and Mr. Raboin started reporting to her. When he met with her one-on-one, and tried to outline the challenges he faced in explaining "basic qualifications" to hiring managers, Ms. Poplar initially thought Mr. Raboin was discussing the Textio application, which audits materials for biased content, particularly content that would more likely attract male rather than female applicants. He came to believe that Ms. Poplar was not familiar with the OFCCP requirements.

15.

Toward the end of October, Mr. Raboin conducted a training session for all of Workday's Talent Acquisition Partners (recruiters) on using advanced computer search techniques for identifying diverse candidates. The training would demonstrate to the OFCCP in any audit that Workday proactively attempted to increase the flow of candidates from under-represented groups and ultimately to ensure their representation in the workforce. While Ms. Ames gave Mr. Raboin generally positive feedback about the training, during the training she disagreed with his approach to a widely used sub-search that diversity sourcing experts endorse and teach that yields the best results in targeting female and under-represented minorities' profiles. The approach does not

8  COMPLAINT

violate OFCCP guidelines because the candidates meet all the BQs for the search.  He defended his approach.  Subsequently, Ms. Ames sent him a notice that if he disagreed with her, he needed to raise the disagreement in a one-on-one, not in a public forum. This concerned Mr. Raboin, as the type of sub-search he had recommended did not violate the requirements of the OFCCP. Failing to correct that suggestion to the group at large would give the other recruiters the incorrect impression that they could not run such sub-searches and still stay within the requirements.

16.

At the beginning of the new year, Ms. Ames sent out a Slack message to all her employees telling them that, as opposed to a primary focus on volume, they would need to focus on four vectors: (1) helping Workday's leaders expand their network; (2) ensuring 100% OFCCP compliance; (3) accuracy of forecast; and (4) consistency of process among all the teams.

17.

Mr. Raboin worked hard at his role, exceeding his hiring goals for candidates who started between August 1, 2021 and January 31, 2022.  He had the most hires of all the recruiters supporting the Analytics organization, despite being the newest recruiter.  For this achievement, he received positive feedback from both Laquinta Poplar and Kami Ames and a $30,000 bonus.

18.

In mid-March, Mr. Raboin met with Kami Ames and discussed his efforts to support the vectors she had outlined in January. He expressed concern that Ms. Buford-Poplar had hired about half of her staff externally – people with whom she had worked previously – but had not trained them in OFCCP compliance.  Mr. Raboin noted that he had ended up having to assume responsibility for several non-compliant requisitions from these recruiters.  Ms. Ames indicated

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

that at the time Ms. Buford-Poplar had hired these recruiters, they needed to hire recruiters quickly and had not had time to train them, but Ms. Ames indicated that she would address the problems. To Mr. Raboin's knowledge and belief, that did not happen.

19.

At around this same, Mr. Raboin conducted a survey with Ms. Buford-Poplar's team on how they would respond to seven different recruiting scenarios.  The survey indicated a wide variety of inconsistent processes – and therefore processes that were not fair, equitable, and compliant with the OFCCP processes.

20.

At this same time, Ms. Buford-Poplar developed a spreadsheet of Black and Hispanic candidates, to promote them with the vice presidents and general managers, a process the OFCCP calls "steering" and that violates its regulations. She encouraged the Talent Acquisition Partners to summarize candidates' backgrounds in emails to senior leadership to promote special consideration of these candidates. She encouraged vice presidents to have exploratory conversations with these candidates even if the candidate had not applied for the position they would discuss.  OFCCP prohibits this practice as unfair and inequitable, regardless of the candidates' membership in protected classes, as OFCCP regulations require that the applicant must have expressed interest in the position for a contractor to consider an internet applicant for a position.  An applicant's expression of interest, per 41 C.F.R. 60-1.3, indicates the individual possesses the BQs for the position. Without that expression of interest, the interviewer could not ensure that the interviewee meets the BQ's.

///
///

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

21.

In debriefings after a round of interviews, Mr. Raboin found that interviewers offered vague and subjective analyses of candidates, such as "not a good culture fit", "not a fit with VIBE (Value Inclusion Belonging Equity)". Workday software allowed interviewers to submit subjective interview feedback, which led to interviewers assessing candidates based on different criteria for the same role. The feedback process would allow recruiters, even if inadvertently, to skew the feedback, making it unfair and inequitable.  Mr. Raboin developed and presented a proposal to move interviewers to a structured, rather than unstructured, feedback process by introducing a hiring rubric for interviewers to use. The rubric would require hiring managers to assign a score associated with a particular description of performance to six performance criteria. The approach would introduce consistency, a significant step toward fairness and equity in assessments.  Mr. Raboin also worked with hiring managers on streamlining the hiring process, an approach that the General Manager of Analytics advocated, especially around the number of interviews.  Mr. Raboin stressed that once they settled on a process and the number of interviews, all candidates had to go through the exact same process. Despite the GM's support for this process, Ms. Ames did not roll out the process.  Ms. Raboin also advocated for companywide OFCCP training, that would have cost approximately $15,000. Ms. Ames also chose not to move forward with that training, indicating that Workday did not have the budget for it.

22.

Nonetheless, in his intake process with hiring managers, Mr. Raboin would work flexibly with them to set the hiring processes, but would advocate for the streamlined process.  He would communicate with the hiring managers that once the interview process started, the interviewers

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

needed to use the same, consistent process with all candidates. Despite Mr. Raboin's efforts to introduce consistency and compliance into the recruitment process, some managers, unfamiliar with the OFCCP requirements, would still request changes in hiring processes that would make Workday non-compliant. For example, in late July 2022, Mr. Raboin was responsible for recruiting for a position under Lin Ma, the Director of Software for the Analytics team. Mr. Raboin met with Ms. Buford-Poplar prior to meeting with Mr. Ma. In her meeting with Mr. Raboin, Ms. Buford-Poplar agreed with Mr. Raboin that he needed to use a consistent process. However, Mr. Ma then wanted to change the process after already having interviewed several candidates. When Mr. Raboin refused, since the change would make the process non-OFCCP-compliant, the manager requested a meeting with Ms. Buford-Poplar. In the meeting among the three of them, Ms. Buford-Poplar changed direction, indicating that she thought compliance was about reaching a compromise. This position made Mr. Raboin uncomfortable, and he voiced his opposition to the proposed changes, given the OFCCP requirements. Ms. Buford-Poplar became upset with him.

23.

After the meeting, Ms. Buford-Poplar indicated that she did not like how Mr. Raboin had talked about compliance with her, claiming that Mr. Raboin had raised his voice to her. She sent him an email indicating that his communications were impolite and disrespectful. Mr. Raboin disagreed in his reply, noting that she seemed upset that he refused to compromise on changing the hiring process part-way through the interview cycle. He expressed that such changes would make the processes inconsistent and a violation of OFCCP requirements. He re-addressed a situation in which a candidate had notified him that she had not been interviewed, then indicated three hours later that she had been interviewed after he had notified the hiring manager of the

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

situation. He noted that, again, the process was not compliant with OFCCP. He ended the discussion with Ms. Buford-Poplar by indicating that he understood the change in focus away from OFCCP compliance and promising to be sensitive to the timing of when he would voice disagreement.

24.

The efforts by untrained managers to make changes to the processes continued, and trained management continued to work on compliance.  In mid-October, Abby LaLiberty, a Talent Acquisition Program Manager, sent out a Slack message in response to a question from Mr. Raboin, that, per the IHRW Learning Lab for Recruiters training, they could not change a process once interviewing of candidates had started, otherwise Workday would be non-compliant with the OFCCP.  In early fall, Ms. Ames called an emergency meeting to discuss OFCCP compliance. She noted that 30% of Workday's revenue came from federal government clients, making compliance critical.

25.

Mr. Raboin became concerned when he noticed that while he consistently rejected candidates who did not meet the BQs, other recruiters at Workday did not adhere to the same standard. In July of 2022, Ms. Buford-Poplar assigned Mr. Raboin to take over requisitions from a contract recruiter she had hired whose contract had ended. During this transition, he found that four of those requisitions had candidates pending who had received verbal offers. He realized that none of these candidates met the BQs for their respective roles. When he informed Ms. Buford-Poplar about the situation, she dismissed his concerns. She indicated that the contract recruiter had not received proper training because, when he joined, Workday had an overwhelming number of

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

positions to fill, leaving no time to train him. Later, around November 2022, Ms. Buford-Poplar assigned Mr. Raboin to take over requisitions from a different recruiter she had also hired. Again, he found that this recruiter also moved forward candidates who did not meet the BQs.

26.

When Mr. Raboin took over these requisitions, hiring managers learned about the importance of BQs for the first time. Mr. Raboin educated his hiring managers about the potential implications of moving forward with candidates lacking BQs. He worried that doing so, especially when the recruiters and hiring managers did not consider other qualified candidates, could lead to allegations of discrimination from individuals who Workday passed over. Such allegations could result in legal challenges or complaints filed with the OFCCP.

27.

Mr. Raboin also worried about the negative impact on team morale when Workday hired someone lacking the necessary skills and qualifications. Mr. Raboin had seen that hiring someone lacking those required skills and qualifications would likely lead to the new hire's struggle to succeed in the role, affecting overall team performance. In one meeting around November 2022, Ms. Ames expressed concern about reports that she had received on how the "quality of hire", as measured by the percentage of new employees being put on a performance improvement plan, had risen significantly. She attributed this problem to the recruiters not doing their jobs, but did not emphasize or even voice a need to recruit only candidates that met the BQs.

28.

Workday has a written "Whistleblower and Complaint Policy". The policy states that employees are "encouraged to use the guidance provided by this Policy to report all known and

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

suspected improper activities" and goes on to say it would "provide a confidential or anonymous avenue of communication for reporting any improper activities." It indicates that employees have a responsibility to "report alleged violations of…any laws and governmental rules and regulation..." It instructs employees who are not comfortable speaking with their managers or are not satisfied with their manager's response to talk to the Workday Integrity Team or the head of Employee Relations, amongst others. It prohibits retaliation against persons who provide "truthful information concerning such person's reasonable, good faith belief that a possible violation of any federal, state, or foreign law has occurred." All employees received email messages sent by the Integrity team encouraging employees to report violations.

29.

Mr. Raboin had growing concerns about the lack of compliance to the OFCCP requirements, the number of non-compliant candidates moved forward on requisitions he inherited to complete, and the apparent indifference of his management to the issue. With those concerns and the Whistleblower and Complaint Policy in mind, from late November through mid-December, Mr. Raboin met three times with Jazsmine Gordon, a Senior People Consultant, to lodge complaints about non-compliance with the OFCCP regulations. In the first meeting on or about November 21, he raised his concerns about the failure to train all managers and recruiters on the OFCCP requirements and compliance. He pointed out that managers, including Ms. Buford-Poplar, Lin Ma, and at times Ms. Ames, advocated for practices inconsistent with the OFCCP training he and others had received. He discussed his concerns that recruiters and managers were moving forward candidates who did not meet the basic qualifications, a key compliance metric. He explained that he felt that he had a choice between doing his job properly

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

by ensuring compliance or following the directions of his manager and not staying in compliance. He then expressed concerns about the confidentiality of the complaints he was raising and asked that his identity as the complainant be protected.

30.

About three weeks after Mr. Raboin made his complaints to Ms. Gordon, on or about the 5th of December, Ms. Buford-Poplar sent him an email notifying him that he would transfer to report to David Christenson. She then provided significantly negative and inaccurate feedback to him. She stated an expectation of "improvement" by "compromise on non-compliance areas of the process" and "adjusting your preferred process to meet [hiring managers] needs", an expectation that would put them out of OFCCP compliance.   She leaned on negative candidate feedback about recruiters, although the system could not clearly identify which recruiter the candidate might be reviewing. She noted a failure to provide sufficient screening notes, including information she wanted that OFCCP training indicated should not be included. She set an expectation of his working from the office regularly, although none of his management worked in his office, and management allowed other recruiters in similar situations to work entirely remotely.  Mr. Raboin in any case already regularly worked from the office, making the "expectation" gratuitous. Mr. Raboin had heard very little of this feedback from Ms. Buford-Poplar, although she claimed she had previously provided the feedback in one on ones. Mr. Raboin objected and responded point-by-point to her.   She nonetheless shared this same negative and inaccurate feedback about Mr. Raboin with Mr. Christenson, without sharing significant positive feedback from at least a dozen managers and candidates for whom Mr. Raboin had filled requisitions in the prior four months.

///
///

16 COMPLAINT

31.

The same day that Ms. Buford-Poplar notified him of his transfer, Mr. Raboin had his second meeting with Ms. Gordon. Ms. Gordon told Mr. Raboin that she had her team investigating his complaints about OFCCP compliance.  Having been suddenly transferred and given so much negative feedback so soon after his initial meeting with Ms. Gordon, Mr. Raboin asked if she had associated his name with the investigation. Ms. Gordon apparently thought his concern irrelevant – she indicated that he had already talked to Ms. Buford-Poplar and Ms. Ames about the compliance issues. He noted the unfair and inaccurate feedback from Ms. Buford-Poplar, and that such feedback – coming as she transferred him, without specific examples, and without the counterbalance of the positive feedback he had received from others – seemed inconsistent with Workday's stated "Integrity" value, which says that Workday works hard "to build and sustain a culture of honesty".

32.

In his third and final meeting on or about the 16th of December with Ms. Gordon, Mr. Raboin again raised the issue of Ms. Ames' failure to have all the managers and recruiters trained on OFCCP compliance. Ms. Ames had told him that they had too many requisitions to fill and consequently did not have time to train everyone. Ms. Ames separately suggested to both Ms. Buford-Poplar and Mr. Raboin that they document in Workday that they had changed the process – which itself would violate the OFCCP guidelines, and which indicated to Mr. Raboin that she did not understand compliance. Mr. Raboin then clearly communicated to Ms. Gordon that he considered the performance feedback email from Ms. Buford-Poplar, which they had discussed previously, an act of retaliation for making his complaint. Mr. Raboin requested whistle-blower

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

protection and that Workday hold Ms. Buford-Poplar and Ms. Ames accountable for providing and passing along false feedback to his new supervisor. Ms. Gordon ended the meeting by recommending that he focus on his relationship with his new manager. She essentially closed the door on dealing with the compliance issues.

33.

Despite Ms. Buford-Poplar's negative position on the consistent processes Mr. Raboin advocated and her subsequent scathing evaluation of Mr. Raboin, Mr. Raboin's new manager agreed that the changes requested by the other managers would put Workday out of compliance with OFCCP. He assured Mr. Raboin that he had done the right thing in not making the changes Ms. Buford-Poplar had pushed.

34.

Mr. Raboin continued to work hard at doing his job in compliance with OFCCP requirements, filling requisitions and conducting training with interview teams and recruiters. At the beginning of January 2023, he met with Dave Christenson one-on-one. Mr. Christenson indicated that he planned to assign Mr. Raboin some distributed systems roles in Chief Technology Officer Jim Stratton's OS/Product and Technology organization, based outside the Bay area, that would leverage Mr. Raboin's background of recruiting in what is a challenging area.  Mr. Christenson also mentioned supporting Julie Carling and Terry Olkin's organization, assuring Mr. Raboin that he had plenty of work for the recruiters that reported to him. While hiring had slowed in January, Mr. Raboin was still working on Analytics requisitions that had been assigned to him.

///
///
///

18 COMPLAINT

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

35.

Nonetheless, approximately a month later, on January 31, 2023, Kami Ames met with Mr. Raboin to tell him he was part of the 3% Workday reduction in force.  She did not share with Mr. Raboin why Workday had selected him for layoff.  Workday has indicated that the organization that Mr. Raboin's department supported with recruiting was significantly impacted by the layoff, so his department had to downsize.

36.

The only bona fide occupational qualification that Workday lists for **Senior Talent Acquisition Partner** positions is 5 years' experience with technical recruiting, with no specific educational requirement -- qualifications that Mr. Raboin easily exceeded. **Workday's WARN** notice indicated that of the 161 Talent Acquisition personnel identified, they had laid off 12 of them.  Mr. Raboin's department – TAP P&TSCO – did not shut down.  The other P4 Sr Talent Acquisition Recruiters in his department all remained employed. The work he was doing did not go away. Of the people laid off, Mr. Raboin was the oldest.  Of all the 161 Talent Acquisition personnel, only 1 was older than him, another the same age. The remainder were all younger. Many employees who had less success filling requisitions than did Mr. Raboin remained employed.  He was the only person laid off from his department and was 9 years older than the next younger employee in the department. Many younger employees who had started after Mr. Raboin remained employed .

37.

Workday had no required retirement age for Senior Talent Acquisition Partners and would have had no valid, legal reason for any such requirement. Workday had no bona fide seniority

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

system that would have allowed Mr. Raboin's termination. On knowledge and belief, Mr. Raboin had more experience and credentials than many of the employees who remained.  Workday did not offer Mr. Raboin a voluntary early retirement incentive plan.  Workday was not observing the terms of any bona fide employee benefit plan that would permit Workday to terminate Mr. Raboin involuntarily.  Workday did not have good cause to discharge Mr. Raboin, as he had an exemplary success record in filling positions for hiring managers.

38.

Notably, employees who failed to comply with OFCCP requirements remained employed. Employees who directed non-compliance with the OFFCCP requirements remained employed. Employees who acquiesced in non-compliance with OFCCP requirements remained employed. In contrast, Mr. Raboin – who diligently tried to recruit in compliance with OFCCP requirements, opposed the failures of others to stay in compliance, reported on the resistance to compliance with those federal regulations, and successfully filled the positions for which he recruited – was terminated.

39.

After his termination, as detailed in paragraph 4, *supra*, Mr. Raboin exhausted his administrative remedies, filing complaints with the OFCCP, the EEOC, and BOLI, and receiving a 90-day Right To Sue letter from the EEOC.

40.

Mr. Raboin has struggled significantly because of the loss of his job.  He felt betrayed, shocked, and heartbroken by the termination, given his strong performance, Workday's stated value of integrity, and its complaint policy that promised protection from retaliation.  Prospective

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

employers see his layoff as his being among the bottom 3% of employees in performance. He is humiliated by the termination and has told few family members or friends about it.  He has had to seek weekly help from a therapist.  His termination has triggered anxiety in his wife about their future, and she has also sought the assistance of a therapist. He worries about how his termination will impact their relationship. He worries about the impact of the loss of income. He is extremely concerned that his age will make finding a job comparable to the one he lost nearly impossible. He applies regularly for open positions for recruiters but has received only two interviews as of the date of this filing. In those screening interviews, questions about his layoff seemed to contribute to the recruiters failing to move his candidacy forward. The loss of his identity as a successful and respected recruiter has devastated him.

### DAMAGES

41.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic damages in an amount to be determined at trial. To date, such economic damages are estimated and alleged, solely for the purposes of ORCP 18B and FRCP 8(a)(3), in the amount of at least $20,271.67 per month in lost wages, prorated bonus, and benefits since April 3, 2023, or over $95,952.57 as of the date of this filing. In addition, Mr. Raboin intended to work until at least the age of 75. We estimate future lost pay, lost benefits, lost bonuses, and lost restricted stock units through the age of 75 to amount to approximately $1,991,000.  We estimate additional losses of at least $1620 per month, or $19,440 per year due to starting social security benefits at 65 rather than 70 years old, increasing each year with cost of living increases.

21 COMPLAINT

42.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, mental stress, severe emotional distress, humiliation, inconvenience, loss of enjoyment of life, damage to his professional reputation, and interference with his normal and usual activities, for which he is entitled to recover in an amount found to be appropriate by a jury based on the evidence presented at trial. Solely for the purposes of ORCP 18B and FRCP 8(a)(3), Plaintiff estimates and alleges such damages for discrimination and retaliation by defendant Workday, as well as the aiding and abetting of that discrimination and retaliation by the individual defendants, in the amount of $450,000. Plaintiff further seeks pre- and post-judgment interest on all damages awarded, and compensation to offset the tax implications of receiving a lump sum payment rather than wages over an extended period.

43.

Pursuant to 42 U.S.C. §2000e-5(g), ORS 659A.885, and ORS 20.107, Plaintiff is entitled to an award of reasonable attorney fees, expert witness fees, and costs incurred in filing this action and litigating the claims.

## CLAIMS

### 1ST CLAIM FOR RELIEF
### WHISTLEBLOWER DISCRIMINATION/RETALIATION – 42 USC §2000e-3(a)/41 U.S.C. ¶ 4712/ 41 CFR § 60-1.32(a)(3), ORS 659A.199
### (Against Defendant Workday, Inc.)

44.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

22  COMPLAINT

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

45.

At all times material to this action, as per paragraph 6, *supra*, defendant Workday, Inc. was an employer within the meaning 42 U.S.C. §2000e(b) and ORS Chapter 659A.001(4)(a), and a federal contractor/employer within the meaning of 41 CFR § 60-3.16(G).

46.

During all times material to this complaint, plaintiff David Raboin was an "employee" of Workday, Inc. within the meaning of 42 U.S.C.§2000e(f) and a "person" within the meaning of ORS 659A.001(9)(a).

47.

At all times material to this complaint, Ms. Ames (Mr. Raboin's second-level manager), Ms. Buford-Poplar (Mr. Raboin's supervisor for much of his tenure), and Ms. Gordon (Mr. Raboin's "People Consultant" at Workday) managed Mr. Raboin, had hiring and firing authority, or had, per knowledge and belief, influence on the Talent Acquisition Partners chosen for firing by Workday. Each of them, as an agent of Workday, Inc., was an employer within the meaning of 42 U.S.C. §2000e(b) and ORS 659A.001(4)(a) and a "person" within the meaning of ORS 659A.001(9)(a).

48.

Mr. Raboin objected frequently to Kami Ames, Laquinta Burford-Poplar, and Jazsmine Gordon about, and opposed and reported what he in good faith believed to be, repeated actions of management that tended to violate the statutes and regulations of the OFCCP regarding fair and equitable processes for recruiting and hiring employees.

///
///

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

49.

Ms. Buford-Poplar gave an unwarranted negative and inaccurate personnel evaluation of Mr. Raboin to Mr. Raboin's new manager shortly after Mr. Raboin complained formally to management about Ms. Buford-Poplar's attempts to evade the requirements of the OFCCP and shortly before Workday selected employees to discharge as part of its reduction in force (RIF). Ms. Ames also attempted to evade the requirements of the OFCCP at Workday, acquiesced to Ms. Buford-Poplar's undermining of the OFCCP requirements at Workday, failed to countermand Ms. Buford-Poplar's unwarranted negative and inaccurate personnel evaluation of Mr. Raboin, and failed to oppose his retaliatory selection for layoff. Ms. Gordon failed to address Ms. Buford-Poplar's unwarranted negative and inaccurate personnel evaluation of Mr. Raboin and failed to oppose his retaliatory selection for layoff. All these unwarranted discriminatory and retaliatory actions influenced, resulted in, or authorized Mr. Raboin's selection for discharge in the RIF.

## COUNT ONE
### WHISTLEBLOWER DISCRIMINATION
**42 USC §2000e-3(a)/41 U.S.C. § 4712/ 41 CFR § 60-1.32(a)(3)**

50.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

51.

Federal statute 42 U.S.C. §2000e-3(a) makes it an unlawful unemployment practice for an employer to discriminate against any employee because that employee has opposed any practice made an unlawful employment practice by the Equal Employment Opportunities Act (42 U.S.C. §2000e *et seq*).

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

52.

Federal statute 41 U.S.C. § 4712(a)(1) & (2)(G) prohibits the discharge of or other discrimination against an employee of a contractor as a reprisal for disclosing to a management official or other employee of the contractor, who has the responsibility to investigate, discover, or address misconduct, a violation of law, rule, or regulation related to a federal contract.

53.

Federal regulation 41 CFR § 60-1.32(a)(3) states that "The contractor*** shall not **discriminate against any individual because the individual has engaged in or may engage in***Opposing any act or practice made unlawful by the Order" [*i.e.,* Executive Order 11246, As Amended, Equal Employment Opportunity].

54.

Workday discriminated against Mr. Raboin by discharging him (1) for repeatedly and vocally opposing Ms. Ames's and Ms. Buford-Poplar's violation of OFCCP compliance statutes and regulations at Workday; (2) for disclosing to Ms. Ames (who had the responsibility to investigate, discover or address misconduct) what Mr. Raboin had a good faith belief were violations of the OFCCP statutes and regulations by Ms. Buford-Poplar; and (3) for disclosing to Ms. Gordon (who had the responsibility to investigate, discover or address misconduct) what Mr. Raboin had a good faith belief were violations of the OFCCP statutes and regulations by Ms. Buford-Poplar and Ms. Ames.   Workday's discharge of Mr. Raboin violated 42 U.S.C. §2000e-3(a), 41 U.S.C. § 4712(a)(1) & (2)(G), and 41 CFR § 60-1.32(a)(3).

///
///
///
///

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

55.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, and is entitled to attorney's fees and costs, as alleged in paragraphs 41 to 43.

## COUNT TWO
### WHISTLEBLOWER RETALIATION
### ORS 659A.199

56.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

57.

ORS 659A.199 makes it an unlawful employment practice for an employer to discharge or in any manner retaliate against an employee for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation.

58.

Workday retaliated against Mr. Raboin by discharging him because of his repeated, good-faith reporting to Ms. Ames, Ms. Gordon, Ms. Buford-Poplar, and subsequently to David Christenson, of recruitment processes by Ms. Ames and Ms. Buford-Poplar that he believed were evidence of violations of OFCCP statutes and regulations at Workday. Workday's discharge of Mr. Raboin violated ORS 659A.199.

///
///

26 COMPLAINT

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

59.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, and is entitled to attorney's fees and costs, as alleged in paragraphs 41 to 43.

### 2ND CLAIM FOR RELIEF
### AGE DISCRIMINATION - ORS 659A.030(1)(a)
### (Against Defendant Workday, Inc.)

60.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

61.

The State of Oregon has declared, in ORS 659A.009, that it is the public policy of Oregon that the abilities of an individual, and not any arbitrary standards that discriminate against an individual solely because of age, should be the measure of the individual's fitness and qualification for employment.

62.

ORS 659A.030(1)(a) makes it an unlawful employment practice for an employer, because on an individual's age, to discharge the individual from employment.

63.

At all times material to this action, Defendant employed at least 1 employee and was an employer within the meaning of ORS 659A001(4)(a).

///
///
///

27  COMPLAINT

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

64.

During all times material to this complaint, plaintiff David Raboin was an employee of Workday, Inc. At the time of his termination, he was a week shy of his 64th birthday.  As a person over the age of 18, he falls within the protections of ORS 659A.030(1)(a).

65.

Defendant had no bona fide occupational qualification, no required retirement age, no bona fide seniority system, no voluntary early retirement incentive plan, no bona fide employee benefit plan, no good cause, and no reasonable factor other than age for discharging Plaintiff while it kept significantly younger employees who had worked less time at Workday and with less successful performance.

66.

Defendant Workday, Inc., through its agents, Ms. Ames, Ms. Gordon, and Ms. Buford-Poplar, who were acting within the scope and course of their employment, discharged Plaintiff David Raboin at least in part because of his age, violating ORS 659A.030(1)(a).

67.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, and is entitled to attorney's fees and costs, as alleged in paragraphs 41 to 43.

**3ʀᴅ CLAIM FOR RELIEF**
**AIDING AND ABETTING - ORS 659A.030(1)(g)**
**(Against Defendants Kami Ames, Jazsmine Gordon. Laquinta Buford-Poplar)**

///
///

28 COMPLAINT

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

68.

Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the prior paragraphs of this complaint.

69.

ORS 659A.030(1)(g) makes it an unlawful employment practice for any person, whether an employer or an employee, to aid, abet, incite, compel, or coerce the doing of any act forbidden under Chapter 659A.

70.

Kami Ames is an employee in the employ of Workday, Inc. At all times material to this action, she was the Director, Production and Technology Talent Acquisition, and as such she had hiring and firing authority.

71.

Jazsmine Gordon is an employee in the employ of Workday, Inc. At all times material to this action, as a Senior People Consultant, she had responsibility for ensuring compliance with the Oregon Equality Act by Workday managers of any departments she supported.

72.

Laquinta Buford-Poplar is an employee in the employ of Workday, Inc. At all times material to this action, she was a Talent Acquisition Manager and as such she had hiring and firing authority.

73.

Ms. Ames, Ms. Buford-Poplar, and Ms. Gordon all had, per knowledge and belief, influence on or authority over the choice of Talent Acquisition Partners chosen for layoff by

**THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC**
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

Workday.  Ms. Buford-Poplar's gave unwarranted negative and inaccurate feedback about Mr. Raboin in retaliation for his complaints about her attempts to evade the requirements of the OFCCP. Ms. Ames attempted to evade the requirements of the OFCCP, acquiesced to Ms. Buford-Poplar's undermining of the OFCCP requirements at Workday, and failed to countermand Ms. Buford-Poplar's unwarranted negative and inaccurate feedback about Mr. Raboin. Ms. Gordon failed to address Ms. Buford-Poplar's unwarranted negative and inaccurate feedback about Mr. Raboin and failed to address the retaliatory nature of his selection for layoff. These acts by these three defendants aided, abetted, incited, compelled, or coerced Workday to discharge Mr. Raboin in retaliation for his complaints about lack of compliance with the OFCCP regulations. Their actions constituted a violation of ORS659A.030(1)(g).

74.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer non-economic damages, and is entitled to attorney's fees and costs, as alleged in paragraphs 41 to 43.

### REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial on all triable claims and issues to the extent allowed under the law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant as follows:

1. Injunctive relief requiring Workday to train all its recruiting staff in OFCCP processes and to comply with OFCCP regulations in its recruiting processes; to set up a complaint

THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN STREET, SUITE 200
HILLSBORO, OREGON 97124
PH: 971-232-1230 /F: 503-214-7169
ELIZABETH@EJILAW.COM

reporting and investigation system external to Workday; other non-monetary relief as appropriate.

2. an order reinstating Plaintiff's employment or, in the alternative, an award of lost future wages and fringe benefits through the age of 75, in an amount to be determined at trial;

3. an award of economic damages including backpay, bonus, and fringe benefits, prejudgment interest through trial, and amounts to redress reduced Social Security benefits, in an amount to be proven at trial;

4. an award of non-economic damages;

5. an award of reasonable attorney fees and costs as allowed by 29 U.S.C. § 216(b); and

6. any other relief the Court deems just and equitable as per 29 U.S.C. § 626(b).


Dated: August 23, 2023

/s/ Elizabeth J. Inayoshi
Elizabeth J. Inayoshi, OSB #133929
THE LAW OFFICE OF ELIZABETH J. INAYOSHI, LLC
330 NE LINCOLN ST, SUITE 200
HILLSBORO, OR 97124
971-232-1230
Elizabeth@ejilaw.com
Attorney for Plaintiff

31  COMPLAINT