IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID RABOIN**,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**WORKDAY, INC.**,<br><br>　　　　Defendant. | Case No. 3:23-cv-1230-SI<br><br>**OPINION AND ORDER EXPLAINING WHY COURT IS GRANTING DEFENDANT WORKDAY INC.'S MOTION FOR RULE 35 EXAMINATION** |

Dana L. Sullivan and Emerson Lenon, BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP, 621 SW Morrison Street, Suite 1250, Portland, OR 97205. Of Attorneys for Plaintiff.

Darin Sands, BRADLEY BERNSTEIN SANDS LLP, 1211 NW Glisan Street, Suite 204, Portland, OR 97209; and Paul S. Cowie, John Ellis, and Gal Gressel, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Four Embarcadero Center, Seventeenth Floor, San Francisco, CA 94111. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

　　Plaintiff David Raboin is a former employee of Defendant Workday, Inc. ("Workday"). He has sued Workday for Whistleblower Retaliation in violation of Oregon Revised Statute § 659A.199, alleging that Workday unlawfully terminated his employment. Now before the Court is Workday's Motion for a Rule 35 Examination of Raboin and Disclosure of all Relevant

Mental Health Records and Request for Sanctions. ECF 72 ("Motion").[1] For the reasons explained below, the Court in large part grants the motion but denies sanctions.

Under Rule 35 of the Federal Rules of Civil Procedure, "[t]he court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." The order "may be made only on motion for good cause." *Id.* at (a)(2)(A). The moving party bears the burden of establishing the 'in controversy' and 'good cause' requirements. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964).

"Most district courts in the Ninth Circuit evaluate whether the 'in controversy' requirement is satisfied by applying the test set forth in *Turner v. Imperial Stores*." *Andrade-Tafolla v. United States*, 2022 WL 3153267, at *2 (D. Or. Aug. 8, 2022) (citing 161 F.R.D. 89 (S.D. Cal. 1995)); *see also, e.g.*, *Jeanniton v. Or. St. Hosp.*, 2006 WL 8458964, at *1 (D. Or. Aug. 10, 2006) (applying *Turner* to resolve a motion for a Rule 35 examination).[2] Under the *Turner* test, a party places their mental or physical condition in controversy

> where the cases involve, in addition to a claim of emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress;

---

[1] Notwithstanding Workday's request for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. *See* LR 7-1(d)(1).

[2] In an unpublished opinion, the Ninth Circuit itself relied on *Turner* to evaluate an order compelling a Rule 35 mental examination. *See Wilson v. Dalton*, 24 F. App'x 777, 779 & n.12 (9th Cir. 2001) (holding that express allegations of "severe emotional distress and mental anguish," deposition testimony describing long-lasting and significant emotional distress that "amount[ed] to allegations of severe emotional injury" and the plaintiff's attempt to recover "a substantial amount in emotional distress damages" placed his mental health in controversy for purposes of Rule 35).

> and/or (5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

*Turner*, 161 F.R.D. at 95 (cleaned up). To evaluate whether good cause exists, courts in the Ninth Circuit consider, among other factors, "(1) the possibility of obtaining the desired information by other means; (2) whether the plaintiff plans to prove her claim through testimony of expert witnesses; (3) whether the desired materials are relevant; and (4) whether the plaintiff claims ongoing emotional distress." *Andrade-Tafolla*, 2022 WL 3153267, at *2 (citing *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165 (N.D. Cal. 2013)).

Here, Raboin alleges that Workday unlawfully terminated his employment and, as a result, he has suffered and will continue to suffer "severe emotional distress." ECF 53 (First Amended Complaint) ¶ 44. Raboin has also stated in support of the parties' written stipulations that the termination of his employment has caused him "severe emotional distress, in excess of garden variety emotional distress." ECF 59 at 3. Further, the discovery process has shed additional light on Raboin's emotional distress. At one point, Raboin told his therapist that he had "thoughts of self-harm and/or suicide." *See* ECF 72 at 4; ECF 73 ¶ 9. Raboin also is "haunted by recurring nightmares" that "feel so real." *See* ECF 73 ¶ 3 & Ex. B at 9 (ECF 73 at 40). As a result, Raboin "continues to experience symptoms of emotional distress, persistent anxiety, . . . episodes of panic, difficulty concentrating, and insomnia." *Id.* at 37.[3]

The Court finds that Workday has established that Raboin's mental condition is "in controversy" and that good cause exists to order a Rule 35 examination. At least two of the

---

[3] During a telephone conference with the Court on September 17, 2025, Raboin preserved his right to testify about "thoughts of self-harm or suicide," "unsettling nightmares that leave him anxious and exhausted; and that he has sought professional help seeking suggestions, techniques, or resources to help him manage or reduce the intensity of these trauma-related nightmares, including at the current time." *See* Tr. of Sept. 17th Proceedings at 5:5-21. Raboin confirmed the same in an email sent to the Court on September 25, 2025.

PAGE 3 – OPINION AND ORDER

*Turner* factors are present to satisfy the first requirement: (1) there is an explicit claim of unusually severe emotional distress in Raboin's First Amended Complaint (at ¶ 44); and (2) Raboin produced evidence demonstrating that his severe emotional distress manifests in "specific mental or psychiatric injur[ies]," including insomnia, anxiety, and suicidal ideations. Those injuries are clinical, even if self-diagnosed. Moreover, "an attribution of physical manifestations of . . . emotional distress allegedly caused by Defendants' conduct . . . generally would warrant a Rule 35 examination." *See Alfredo v. Ditech Fin. LLC*, 2018 WL 11347246, at *3 (C.D. Cal. Dec. 3, 2018). Raboin maintains that his emotional distress causes him insomnia and vivid recurring nightmares, which are physical manifestations of his emotional distress that he alleges were caused by Workday. Additionally, Raboin's insistence that his "severe emotional distress" is ongoing is sufficient to establish good cause. *Id.*; *see also Andrade-Tafolla*, 2022 WL 3153267, at *3 (noting that allegation of ongoing mental distress was an additional factor supporting a Rule 35 examination). Thus, a Rule 35 examination is appropriate in this case.

A Rule 35 order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). Workday submitted a proposed order with these details. ECF 72-1. Raboin agreed to some of the basic terms of the examination, including that Dr. Michelle Guyton, Ph.D., will perform it.[4] Raboin, however, expresses several objections to the scope of the examination. Raboin argues that Workday may use the Rule 35 examination to develop evidence that Workday may later attempt to use at trial improperly to prove propensity, or character, evidence in violation of Rule 404(a)(1) of the Federal Rules of Evidence. *See* ECF 79 at 5-6. Thus, Raboin requests that

---

[4] Raboin has no objection to sections 1, 2, 4, 6-8, and 10-14 of Workday's Proposed Rule 35 Order. *See* ECF 72 at 6.

the Court impose "reasonable limitations" on the examination, memorialized in his own proposed order. ECF 73, Ex. J (ECF 73 at 89-100).

As a threshold matter, Raboin's asserted justification to limit the examination is both premature and unpersuasive. Evidence need not be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b). Workday may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id.*; *see also Kerr v. U.S. Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 196 (9th Cir. 1975) ("[I]t is no ground for objection that information sought in pretrial discovery would not be admissible at trial."). That Workday seeks discovery about Raboin's mental conditions through a Rule 35 examination does not change that general principle regarding the scope of discovery. Moreover, in arguing that the evidence Workday seeks would be inadmissible under Rule 404(a), Raboin practically concedes that it is relevant under Rule 401 and thus admissible under Rule 404(b)(2) if used for any proper purpose other than propensity. *See United States v. Verduzco*, 373 F.3d 1022, 1026-27 (9th Cir. 2004); *United States v. Rrapi*, 175 F.3d 742, 748 (9th Cir. 1999) ("Unless the evidence of other [acts] tends only to prove propensity, it is admissible." (quotation omitted)). Indeed, it would be improper for the Court to preclude Workday from discovering relevant and admissible evidence based only on Raboin's hypothetical fear that Workday might try to use the discovered evidence in an inadmissible way at trial—especially when Raboin may file a pretrial *motion in limine* or raise a timely objection if that were to happen.

Because other grounds might justify Raboin's requests to limit the examination, the Court will discuss each of Raboin's proposed limitations. For instance, "[a] court must inquire into the appropriateness of the tests for determining the contested physical or mental state." *Fisher for X.S.F. v. Winding Waters Clinic, PC*, 2017 WL 574383, at *4 (D. Or. Feb. 13, 2017), *order*

PAGE 5 – OPINION AND ORDER

*adopted*, 2017 WL 4780616. To do so, a court should "balance the right of the party to be examined to avoid personal invasion against the moving party's right to a fair trial." *See id.* (quotation omitted).

First, Raboin requests that the Rule 35 examination be limited to events occurring on or after January 1, 2020. ECF 79 at 9. (Raboin worked for Workday from June 28, 2021, through January 31, 2023. ECF 53 (First Amended Complaint) at ¶¶ 6, 34.) Raboin argues that, although Workday has a right to explore potential alternative sources of Raboin's non-economic damages, "that right is not so broad as to allow a wholesale exploration of events in plaintiff's long-distant past where defendant can offer no evidence that plaintiff has no history of significant mental health conditions or treatment." *Id.* at 7. That statement is generally true, insofar as Rule 26(b)(1) of the Federal Rules of Civil Procedure permits only discovery that is proportional to the needs of the case. The error in Raboin's argument is that his proposed temporal limitation is far too restrictive for the needs of the case. The clinical psychologist to whom Raboin consented for performing the examination, Dr. Guyton, explained why "conducting an appropriate and complete mental health forensic examination requires inquiry" into events predating Raboin's employment with Workday:

> [P]ersonal, developmental, social, family, and marital history, education and work history, psychiatric and psychological history . . . are essential topics covered in all forensic evaluations. Without this scope, it would be impossible to contextualize the main referral questions within Mr. Raboin's social, health, and work history. There is no pre-defined relevant time period—all of Mr. Raboin's history, including before January 1, 2020, are relevant to my examination and the opinions that I provide.

ECF 74 (Decl. of Dr. Guyton) ¶ 10. Dr. Guyton's attestation further supports the Court's finding that such an interview is an appropriate test for determining Raboin's contested mental state. *See Fisher for X.S.F.*, 2017 WL 574383, at *4.

PAGE 6 – OPINION AND ORDER

Raboin also argues that because Workday's "original justification" for seeking a Rule 35 examination was that he has ongoing emotional distress, "there is no justification for allowing Dr. Guyton to delve into [Raboin's] childhood or his first marriage nearly three decades ago." ECF 79 at 8. That argument conflates Workday's showing of good cause with Workday's showing of how Raboin's mental wellbeing is in controversy. As explained, the ongoing nature of Raboin's conditions satisfy the good cause showing justifying the Rule 35 examination; however, the severity and physical manifestation of Raboin's emotional distress place his mental condition in controversy. These latter characteristics entitle Workday and its expert to question Raboin about the genesis of his current emotional distress.

Further, Raboin's own proposed temporal restriction supports Workday's inquiry into these earlier events. Raboin's proposed text reads:

> Temporal Scope. Inquiry into Plaintiff's mental health history, *including prior psychiatric treatment*, will be limited to the period beginning January 1, 2020, and will focus on *whether any pre-existing conditions were* exacerbated by Defendant's alleged conduct rather than being *unrelated to the employment relationship*. Dr. Guyton will not inquire into childhood trauma, family psychiatric history, or developmental history of about which Plaintiff does not intend to testify at trial.

ECF 73 at 94 ¶ 5.3 (emphases added). It is difficult to imagine how Dr. Guyton's examination could "focus on" Raboin's "pre-existing conditions" without asking any questions about those conditions or events before 2020. The Court therefore rejects Raboin's first limitation.

Second, Raboin requests that the examination be limited to no more than six hours, instead of eight, as requested by Workday. Dr. Guyton explained that she requires at least eight hours to conduct her examination. *See* ECF 74 ¶¶ 5-7. Because there is no material difference between sitting for testing for six and eight hours—and Raboin does not explain why he asks for that two-hour deviance—the Court finds that an eight-hour examination appropriately balances

Raboin's right to avoid personal invasion with Workday's right to reasonable discovery and a fair trial. *See Fisher for X.S.F.*, 2017 WL 574383, at *4.

Third, Raboin asserts that he should be entitled to audio record the entire Rule 35 examination. Workday, however, seeks to bar recording only of the diagnostic testing portion of the examination, arguing that the recording of the tests may potentially violate the test publishers' copyrights, depending on which tests are used. Workday's argument has little merit. "[W]orks are customarily reproduced in various types of judicial proceedings, including obscenity and defamation actions . . . and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992) (quoting 3 Nimmer on Copyright § 13.05[D] at 13-91 (1991)). Thus, courts in the Ninth Circuit have held that copies of copyright-protected materials made for litigation purposes are protected under the fair use doctrine. *See id.* (copying of documents for purpose of preparing defense experts was fair use); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406-07 (9th Cir. 1982) (copying of allegedly obscene film to be used as evidence in nuisance action was fair use); *accord Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) ("[U]se that has no demonstrable effect upon the market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create."). The Court agrees with Raboin that "[a]ny lingering concerns about distribution of copyright protected material can be obviated by the existing stipulated protective order in place in this matter." *See* ECF 79 at 12. Accordingly, the Court will permit Raboin to audio record the entirety of the examination.

Fourth, Raboin requests that the "[p]sychological and cognitive assessment testing . . . be limited to commonly used and generally accepted standardized tests appropriate for evaluating emotional distress in employment litigation contexts," that Dr. Guyton be prohibited from performing certain tests, and that Workday disclose the list of tests Dr. Guyton intends to perform 48 hours before the test. ECF 73 at 96 ¶ 5.6. In her declaration, Dr. Guyton explains that she cannot determine which tests are appropriate without reviewing Raboin's records and performing the clinical interview. ECF 74 ¶ 12. For that reason, Dr. Guyton will not know in advance which tests she intends to perform. *Id.* ¶ 14. Additionally, Dr. Guyton is concerned that disclosure of all potential tests may lead to invalid test results, as peer-reviewed literature has demonstrated. *Id.* Dr. Guyton also states that it is inappropriate for her to agree to foreclose certain tests before meeting with Raboin, because if Raboin "presents with the potential for a specific psychiatric disorder, it is important that [Dr. Guyton] be able to understand the severity of any symptoms and conduct appropriate follow-up to examinate how that disorder may relate to his claims of emotional distress." *Id.* ¶ 13. Based on these considerations, the Court rejects Raboin's proposed limitations on this issue. Raboin's right against personal invasion will be adequately protected by his ability to record the testing. *See Fisher for X.S.F.*, 2017 WL 574383, at *4. This safeguard obviates any need for Dr. Guyton to disclose in advance her test materials. Conversely, advance disclosure might jeopardize the accuracy of the test results, which would undermine the purpose of the Rule 35 examination.

Fifth, Raboin requests that the only records that Dr. Guyton be permitted to review are those of Raboin's psychotherapist, Dr. Leo Heorsting. Dr. Guyton explains that this limitation is "unacceptable" because "[p]rofessional and peer review articles on the proper conduct of psychological assessments routinely emphasize the importance and relevance of a thorough

PAGE 9 – OPINION AND ORDER

record review." ECF 74 ¶ 9. Peer-reviewed publications also discuss the limitations of self-reported mental health records. *Id.* ¶ 9 n.1. Dr. Guyton therefore maintains that "it is important that [she be] given a copy of all of Mr. Raboin's mental health records, regardless of their age," as well as any "information that Mr. Raboin provided in discovery and his deposition testimony." *Id.* ¶ 9. Raboin states that he "has no records from his prior counseling." ECF 79 at 12. Thus, he asserts, "there is no basis to order plaintiff to produce any additional records, because none are being withheld." *Id.* Raboin also states, however, that "although there is some evidence that plaintiff may have had one session with a counselor in 2022, prior to starting a course of treatment with Dr. Hoersting, plaintiff has no recollection of whom he saw, if anyone, and has no records related to any counseling." *Id.*

In general, a party has a duty to disclose all responsive documents within his possession, custody, or control, that can be located after a reasonably diligent search. *See* Fed. R. Civ. P. 26(a), 34(a). Accepting Raboin's representations as true, he has "has complied with this provision; [Raboin] has no duty to obtain documents which are in the possession, custody or control of third parties," after he makes a reasonably diligent search. *See Gonnuscio v. Seabrand Shipping Ltd.*, 1997 WL 118436, at *2 (D. Or. Mar. 11, 1997). The Court, however, will order Raboin to sign a release authorizing Workday to obtain Raboin's medical records (including mental health records) from a third party because they are relevant to this proceeding. *See Voth v. Mills*, 2009 WL 2952030, at *2 (D. Or. Sept. 11, 2009) (granting "order compelling plaintiff to sign a release which authorizes defendant to obtain and disclose plaintiff's health care records as necessary in this litigation."). Because there is a protective order already in place, ECF 33, such an order will not unduly jeopardize Raboin's privacy. Further, as Dr. Guyton's declaration makes clear, Raboin's full medical records are necessary for a thorough Rule 35 examination.

Finally, Workday requests sanctions in the amount of $9,486 based on Raboin's discovery position. Although Workday has prevailed in its motion for a Rule 35 examination, Raboin was substantially justified in expressing his opposition. "[S]ubstantially justified means there is a dispute over which 'reasonable minds could differ.'" *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005) (quoting *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1257 (9th Cir. 1986)). Although the Court previously indicated during a telephonic status conference that it would likely grant Workday's motion, reasonable minds could differ as to whether each of Raboin's requested limitations on the Rule 35 examination were warranted. Thus, sanctions are inappropriate.

The Court GRANTS Workday's Motion to Compel Rule 35 examination, ECF 72. Except for the provision prohibiting Raboin from audio recording the psychological testing portion of the Rule 35 examination, the Court ADOPTS AND SEPARATELY WILL ENTER Workday's Proposed Order, ECF 72-1.

**IT IS SO ORDERED.**

DATED this 28th day of October, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge