## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID RABOIN**, | Case No. 3:23-cv-1230-SI |
| Plaintiff, | **OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| **WORKDAY, INC.**, | |
| Defendant. | |

Dana L. Sullivan, Courtney Angeli, and Emerson Lenon, BUCHANAN ANGELI SULLIVAN & FERRER LLP, 621 SW Morrison St., Suite 1250, Portland, OR 97205. Of Attorneys for Plaintiff.

Darin Sands, BRADLEY BERNSTEIN SANDS LLP, 1211 NW Glisan Street, Suite 204, Portland OR 97209; and Paul S. Cowie, John Ellis, Gal Gressel, and Babak Yousefzadeh, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff David Raboin ("Raboin") is a former employee of Defendant Workday, Inc.

("Workday"). In his single-claim First Amended Complaint, Raboin alleges that Workday

unlawfully terminated his employment in violation of one of Oregon's whistleblower retaliation

laws, Oregon Revised Statute ("ORS") 659A.199.[1] ECF 53. Pending before the Court are two

---

[1] ORS 659A.199(1) provides, in relevant part: "It is an unlawful employment practice for an employer to discharge . . . an employee . . . for the reason that the employee has in good faith

motions for summary judgment, one from each party. First, Workday has moved for full summary judgment. ECF 94. Second, Raboin has moved for partial summary judgment. ECF 100.[2] The Court has scheduled a jury trial in this case to begin on March 9, 2026. For the reasons explained below, the Court denies Workday's motion for summary judgment and grants in part Raboin's motion for partial summary judgment.[3]

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of

---

reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

[2] Also pending before the Court is Raboin's motion for leave to file a Second Amended Complaint (ECF 115), which the Court will address in a separate Opinion and Order.

[3] Although requested by the parties, the Court does not believe that oral argument would assist in resolving the pending motions. *See* LR 7-1(d)(1).

fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509

F.3d 978, 984 (9th Cir. 2007). "If the moving party meets its initial burden, the non-moving

party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that

there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986)).

When considering a motion for summary judgement, a court must view the evidence in

the light most favorable to the non-moving party and draw all reasonable inferences in favor of

that party. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a

motion for summary judgment," the "mere existence of a scintilla of evidence in support of the

plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"When cross-motions for summary judgment are at issue, [courts] evaluate 'each motion

separately, giving the nonmoving party in each instance the benefit of all reasonable

inferences.'" *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1026 (9th Cir. 2019) (quoting

*ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006)); *see also Pintos v.

Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment

are evaluated separately under [the] same standard."). In evaluating the motions, "the court must

consider each party's evidence, regardless under which motion the evidence is offered." *Las

Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party

bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

In addition, Rule 56(a), which is captioned "Motion for Summary Judgment or Partial Summary Judgment," provides, in relevant part: "A party may move for summary judgment, identifying each claim or defense—or *the part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). The 2010 Advisory Committee explains that this sentence was "added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment; *see also Minority Police Officers Ass'n of S. Bend v. City of S. Bend, Ind.*, 721 F.2s 197, 200 (7th Cir. 1983) ("The word 'judgment' in the term 'partial summary judgment' is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim.").

## BACKGROUND[4]

Workday is a business that develops and provides customers with various business-related applications. Workday has contracts with, among others, the federal government, which makes Workday subject to regulations issued by the Office of Federal Contract Compliance

---

[4] In this section, the Court focuses on facts necessary to provide context to the pending motions.

Programs ("OFCCP"). Raboin began his employment with Workday on June 28, 2021, as a Senior Talent Acquisition Partner. Raboin initially reported directly to Ms. Kami Ames ("Ames") until August 2021, when Ames became his second-level supervisor, and Raboin began reporting directly to Ms. Laquinta Poplar ("Poplar"). Ms. Carrie Paul ("Paul") was Ames's manager, and thus Paul was three levels above Raboin. On or about January 31, 2023, Workday told Raboin that his position was being eliminated due to a reduction in force. Workday terminated Raboin's employment effective April 3, 2023, after Raboin had been employed by Workday for approximately 21 months.

Shortly after Workday hired Raboin, it provided him training on, among other things, a program called "Introduction to OFCCP," in which Workday said that it was "making changes to its hiring process . . . to do business with the U.S. Federal Government." Raboin Decl. (ECF 102), Ex. A & ¶¶ 8-9. The OFCCP is part of the U.S. Department of Labor and, at the time, that office sought to ensure compliance with Executive Order No. 11,246, which prohibited federal contractors from discriminating in employment decisions based on race, color, religion, sex, or national origin.[5]  To promote compliance, the OFCCP issued several regulations, including requiring objective, noncomparative, and relevant basic job qualifications. *See id.* Ex. B & ¶ 10. Workday told Raboin that all employment candidates must meet Workday's stated basic qualifications ("BQs") before advancing in a recruitment process and that Workday could not hire a candidate who did not meet the BQs for the applicable position. Raboin Decl. ¶¶ 6, 10. Another OFCCP regulation established what is known as the "Internet Applicant Rule," which uses four criteria to determine the specific time when, for recordkeeping purposes, someone

---

[5] President Trump revoked Executive Order No. 11,246 in January 2025. *See* Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025).

becomes an "applicant." *See* ECF 100 at 10. Workday trained Raboin how to use the Internet Applicant Rule. Raboin Decl. ¶ 11 & Ex. C. Based on this training, Raboin understood that Workday used four key compliance obligations to ensure that its hiring process was "fair and equitable." Workday must: (1) maintain consistency in how jobs are posted and how interviews are conducted; (2) consider only candidates who met the BQs for that position; (3) document every stage of the hiring process in Workday's system; and (4) record accurate and specific disposition reasons for every applicant. *Id.* ¶ 12. Also from this training, Raboin believed that "[t]hese obligations were necessary to ensure that [Workday] followed the law, as well as to ensure that Workday had the necessary documentation to prove compliance in the case of an audit." *Id.*

In September 2021, Ames asked Raboin to give a demonstration to Workday's recruiters about how to search for candidates on social media. ECF 98-3 at 3. When Ames attended the presentation, she "noticed that there was a search for [the names] Garcia and Hernandez in the Boolean search strings." *Id*. at 3-4. Ames asked Raboin "why it was in there," and he responded, "we'll be able to get a diverse population." *Id*. at 4. Ames then instructed Raboin not to use names in demonstration searches. *Id*.

In October 2021, Poplar and Raboin exchanged emails about how they could contribute to a "culture of change makers" at Workday. ECF 98-2 at 151-54. Raboin told Poplar that he had several "accomplishments related to being a 'change maker,'" including that he "[p]ushed back on moving forward with candidates . . . who did not meet the BQ's." *Id.* at 153. Poplar responded: "I agree with you and think this is fantastic . . . great work and thank you!" *Id.* at 152. She also told Raboin, though, that he can "com[e] across in a contentious fashion" because he tends to "seem very put off by others' suggestions or thoughts (in [his] tone and non-verbal

communication).” *Id.* Raboin responded “[t]hanks for your feedback.” *Id.* at 151.

In January 2022, Ames announced that one of her goals was to ensure 100% OFCCP compliance. Raboin Decl. ¶ 13. Later that year, Raboin reported what he believed to be OFCCP violations at Workday. According to Raboin, the first occurred in May 2022, when a hiring manager, Lin Ma (“Ma”), told Raboin that a candidate wanted to have all their interviews conducted in a single day. *See* ECF 98-2 at 16-18; Raboin Decl. ¶¶ 15-16. Other candidates had already interviewed over multiple days, however, and Raboin was concerned that Workday would be in violation of OFCCP regulations if it changed its interviewing practices mid-hiring. ECF 98-2 at 18; Raboin Decl. ¶¶ 15-16 & Ex. D. Raboin told Poplar about the problem, and Poplar told Ma: “[T]o make sure that we are in OFCCP compliance, we have to make sure that all candidates are going through the same process. We do not want one candidate to come back and say that we had a special process for them and another process for other candidates. we can be fined heavily.” Raboin Decl. Ex D. At about the same time, Raboin complained to Poplar about an internal candidate seemingly being treated differently than an external candidate. *Id.* ¶ 22. Raboin believed that Poplar encouraged Raboin to compromise and find a solution to his concerns other than making trouble with the individual hiring managers. *See id.* ¶¶ 13-22.

Poplar and Raboin held regular Zoom meetings with each other. On one call in July 2022, Poplar recalls Raboin “screaming” at her regarding the report from Ma, with Raboin saying, “I’m going to call you out.” ECF 98-8 at 14-18; *see also* Raboin Decl. ¶ 17. Poplar emailed Raboin after the call telling him that he needed to express his disagreements in a polite and respectful manner. Raboin Decl. ¶ 18 & Ex. E. Poplar and others at Workday also received reports of Raboin being abrasive towards candidates and hiring managers. *See* ECF 105 at 174-75. Between June 2021 and July 2022, however, Raboin had received positive formal evaluations.

When Workday implemented its return-to-office ("RTO") policy in the Fall of 2022, Poplar asked Raboin to comply with that policy by coming into the office at least two days per week. Raboin, however, thought that he had been hired as a remote employee. Poplar and Raboin discussed whether he would need to come to the office. *See* ECF 98-2 at 157-60. Afterwards, Raboin began reporting in person to Workday's Beaverton, Oregon office twice per week. Raboin Decl. ¶ 24. Despite Raboin's in-person attendance, Poplar continued to document that Raboin needed to comply with Workday's RTO policy. *Id.* ¶¶ 24-25.

Raboin lodged another OFCCP compliance complaint with Poplar in November 2022, concerning another hiring manager who wanted to reduce the number of interviews for a candidate after the hiring process had begun. *Id.* ¶ 26. After that report, Poplar sent to Ames and Paul "Slack" messages, emails, notes, and other documents relating to Raboin's alleged misconduct. ECF 105 at 69-70, 106-30. Paul, however, did not review the attached documents. *Id.* at 264- 66. Further, after receiving Poplar's message, Ames did not verify whether Poplar's reports were accurate or speak with Raboin; she merely summarized Poplar's documents and sent her summary to Workday's Human Resources Department ("HR"). *Id.* at 171-75.

That same month, Raboin made a formal complaint to HR about his OFCCP compliance concerns. *Id.* ¶ 27. Between November 21 and December 16, 2022, Raboin met three times with Ms. Jazsmine Gordon ("Gordon"), a Senior People Consultant in HR, to discuss his complaints. *Id.* ¶¶ 28-30. On January 31, 2023, Ames told Raboin that he had been selected for layoff as part of an company-wide reduction in force, due to his poor performance. *Id.* ¶ 32. Unbeknownst to Raboin, Poplar had given Raboin a grade of "four" (out of nine) on Workday's internal evaluation, which reflects a middle-range performance. *See* ECF 98-3 at 14-16, 27. Raboin's final score, however, was later adjusted downward, likely by Paul, to a score of "one," which

reflects low performance. This change was supposedly made because of Raboin's

"inappropriate" workplace behavior. ECF 98-6 at 7-12.

## DISCUSSION

### A. Workday's Motion for Summary Judgment

Workday has moved for summary judgment on three alternative grounds. First, Workday

argues that Raboin did not engage in protected activity under ORS 659A.199. Second, it asserts

that there is no evidence from which a reasonable jury could conclude that Workday fired

Raboin because of any whistleblowing activity. Third, Workday contends that Raboin is not

entitled to punitive damages. After viewing the evidence in the light most favorable to Raboin,

the Court finds that Raboin has shown genuine disputes of material fact sufficient to preclude

summary judgment on each ground.

#### 1. ORS 659A.199

Workday argues that Raboin did not engage in protected activity under ORS 659A.199

because: (1) his complaints concerned discretionary HR practices, not violations of law; (2) his

beliefs were based solely on Workday's policies and trainings, not the law; and (3) his reports

were not made in good faith. ORS 659A.199 is one of Oregon's whistleblower retaliation laws,

along with ORS 659A.203 and ORS 659A.230. ORS 659A.199, unlike ORS 659A.203, "applies

a subjective, good faith standard to employees who report perceived violations of the law." *Boyd*

*v. Legacy Health*, 318 Or. App. 87, 98 (2022) (citing ORS 659A.199); *see also* n.1, *supra*.

"Thus, 'an employee has engaged in protected activity under that provision if the employee has

reported information that they subjectively believe is a violation of a state or federal law, rule, or

regulation, and has a good faith basis for that belief.'" *McClusky v. City of North Bend*, 332 Or.

App. 1, 13-14 (2024) (brackets omitted) (quoting *Boyd*, 318 Or. App. at 98-99). Whether a

plaintiff held a good faith belief "is an issue of fact for the jury unless the Court concludes that

*no* reasonable juror could find for [the plaintiff] on the evidence provided." *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, 647 F. Supp. 3d 992, 1018 (D. Or. 2022) (emphasis in original) (citing *Walker v. State ex rel. Or. Travel Info. Council*, 367 Or. 761, 783-84 (2021) ("[U]nless the trial court concludes that the record is such that no reasonable juror could find for the plaintiff on the issue, whether the employee held a reasonable belief that the employer violated the law is an issue of fact for the jury.")); *see also McClusky*, 332 Or. App. at 14 ("Whether an employee held a subjective good faith belief regarding a violation of law at the time of the report is a question of fact.").

Thus, the relevant question for Raboin's whistleblower retaliation claim is whether he believed in good faith that he was reporting a violation of law and not merely a violation of company policy without the force of law. Whether Raboin actually was reporting only violations of HR practices without the force of law, therefore, bears little to no relevance to that question. *See id.* ("We look to what the employee knew at the time of the report, and it is irrelevant whether hindsight proves that a violation of law in fact occurred.").[6]

Workday quotes *Rosenstein v. PacifiCorp* for the proposition that "'[r]eports of the violations of internal policies' are 'not protected under ORS 659A.199' and cannot constitute protected activity." ECF 94 at 30 (alteration added) (quoting *Rosenstein v. PacifiCorp*, 2025 WL 27193, at *4 (D. Or. Jan. 3, 2025)). *Rosenstein*, however, does not support such a broad statement. As the court there acknowledged, the operative test for whether an activity is protected is whether the employee had a subjective, good faith belief that they were reporting

---

[6] By the same token, it is largely irrelevant how Raboin formed his belief that the behavior he reported were violations of law. Workday suggests that, because Raboin relied solely on Workday policies and trainings to conclude that Workday was behaving illegally, that his reports cannot constitute protected activity. But what matters is whether Raboin held a good-faith belief, not how Raboin formed that belief.

illegal behavior. *See* 2025 WL 27193, at *4 (citing *McClusky*, 332 Or. App. at 13-14; *Boyd*, 318 Or. App. at 98). If there was no evidence from which a reasonable jury could conclude that the plaintiff in *Rosenstein* subjectively believed that the internal policy violations he was reporting were also violations of law, then summary judgment likely would be appropriate. *See id.*

Here, however, Raboin has presented evidence sufficient to raise a triable issue. Among other things, he testified that he did not understand the difference between "something being an OFCCP issue and a Workday compliance issue" and that he believed that OFCCP compliance was determined based on "the Workday system." ECF 98-2 at 43-44, 94. From that testimony, a reasonable jury could conclude that Raboin, even if mistaken, nevertheless had a good faith belief that he was reporting a violation of OFCCP rules. This would make his report a protected activity under ORS 659A.199, even if he was, in fact, merely reporting a violation of Workday's own internal HR rules or policies.

In addition, the "Introduction to OFCCP" training video that Workday showed Raboin early in his employment explained that Workday was "making changes to its hiring process" because "to do business with the U.S. Federal Government, companies must comply with certain federal laws and regulations." Raboin Decl. Ex. A. Thus, Workday trained its employees, including Raboin, that it "must continue to evaluate [its] recruiting and hiring practices relative to these laws and regulations." *Id.* Based on this training, a reasonable jury could conclude that Raboin equated, or conflated, in good faith Workday's HR policies with OFCCP regulations.

Workday also argues that Raboin did not have a good faith belief because he made his reports not out of genuine concern for the law, but to avoid being reprimanded. Asking what Raboin's true motivation was for his reports is simply another way of asking whether Raboin made his reports in good faith. That is a quintessential jury question. *See Karthauser*, 647 F.

Supp. 3d at 1018. As discussed above, there is a genuine dispute of fact with respect to whether Raboin made his reports in good faith. Additionally, Gordon testified during her deposition that she believed Raboin was acting in good faith when he made his reports. *See* ECF 105 at 13 (Q: "[D]id you believe that Mr. Raboin was acting in good faith when he shared with you concerns that he had about Workday's failure to comply with OFCCP regulations?" A: "Whenever employees come to me, I always assume they're acting in good faith, yes."). Ultimately, it is for a jury to decide whether Raboin made his reports in good faith and which side has presented more credible testimony.

### 2. Causation

Workday also argues that Raboin fails to establish causation between his reports and the termination of his employment. To prove a violation of ORS 659A.199, a plaintiff must "establish a causal link between his complaints . . . and defendant's adverse employment actions," such that the former is a "substantial factor" in the employment action. *Ossanna v. Nike, Inc.*, 290 Or. App. 16, 27-28 (2018), *aff'd*, 365 Or. 196 (2019). "[T]o be a substantial factor, an employer's wrongful purpose must be a factor that 'made a difference' in the adverse employment decision." *Id.* (quoting *Hardie v. Legacy Health Sys.*, 167 Or. App. 425, 435-36 (2000), *rev. den.*, 332 Or. 656 (2001)). Workday argues that there is no evidence from which a reasonable jury could find that Raboin's complaints were a substantial factor in his firing, because Raboin's complaints and firing were not temporally close enough to show causation. Raboin, however, does not rely solely on temporal proximity. He also argues also that Workday's reasons for his firing are pretextual, and he invokes the "cat's paw" doctrine when arguing that Poplar's retaliatory animus infected Paul's layoff decision.

The cat's paw doctrine[7] imputes the retaliatory animus (or improper motive) of a co-employee to an employer if the employee acted with retaliatory intent and intended for her action to cause an adverse employment action. *See Poland v. Chertoff*, 494 F.3d 1174, 1182-83 (9th Cir. 2007); *Ossanna v. Nike, Inc.*, 365 Or. 196, 209-10 (2019) (adopting standard as described in *Poland*, 494 F.3d at 1182-83). For example, the hidden, retaliatory motives of an employee who submits poor performance reviews of a peer can be imputed to the company-defendant if the employee intends the reviews to influence the peer's performance evaluations and are a substantial factor in the employer's ultimate adverse employment action. *See Tsur v. Intel Corp.*, 648 F. Supp. 3d 1292, 1308-10 (D. Or. 2022) (finding a triable issue where a co-employee without "any direct input" on the defendant's layoff choices was motivated by a "discriminatory animus," "submit[ted] poor performance reviews" about the plaintiff that "influenced the performance evaluations," which were a substantial factor in the plaintiff's later firing). After a jury is properly instructed to impute the animus of an employee to the employer, a jury must still "consider whether the bias, or the act of the person with that bias, was a substantial factor in the termination." *Ossanna*, 365 Or. at 215; *see also id.* at 214-15 (describing the two "elements" of cat's paw whistleblower retaliation theory that a plaintiff must prove as "(1) a biased intent to cause an adverse employment action and (2) the requisite causal element").

Viewing the evidence in the light most favorable to Raboin, he presents a triable issue as to whether his whistleblowing caused Workday to fire him. Although Workday's stated reason

---

[7] The "cat's paw" refers to Aesop's fable about a monkey who convinces a cat to swat roasting chestnuts off a fire. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 n.1 (2011) (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (Posner, J.)). Despite his promise to share the fruits of the cat's labor, the monkey ate each nut as soon as it left the hearth, leaving the cat with nothing but singed paws. *See id.*

for terminating Raboin was that he was selected to be laid off in a reduction in force based on his poor performance, Raboin had previously received positive formal workplace reviews before his statements to Poplar about Workday's supposed non-adherence to OFCCP rules. Viewing the evidence in the light most favorable to Raboin, between July and December 2022, after Raboin's first complaint about Poplar's hiring practices, Poplar contacted Workday's HR with complaints about Raboin and a reasonable jury could conclude that she knew that those complaints were unfounded. For example, Poplar continued to create a paper trail suggesting that Raboin was resisting Workday's RTO policy, even though Raboin was going into Workday's Beaverton office as directed. After November 2022, when Raboin again reported his belief that Workday recruitment practices violated OFCCP regulations, Poplar sent a collection of Slack messages, emails, notes, and documents relating to Raboin's alleged misconduct to Ames and Paul. In addition, when writing her summary of Poplar's evidence for HR, Ames did not independently verify the accuracy of those reports or speak with Raboin.

From this evidence, a reasonable jury could—but need not—conclude: (1) Poplar harbored a retaliatory animus against Raboin for reporting her behavior; (2) Poplar reported Raboin to Paul with an intent that Workday take adverse employment action against him; and (3) Poplar's reports were a substantial factor in Raboin's firing. Because the cat's paw doctrine is viable under Oregon law, "a speaker of [retaliatory] statements need not be the final decisionmaker of an employment decision" "to create a genuine dispute of material fact on pretext." *See France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015) (citing and describing *Poland*, 494 F.3d at 1174). Accordingly, Raboin's claim survives summary judgment.

### 3. Punitive Damages

Workday argues that Raboin cannot recover punitive damages because there is not clear

and convincing evidence[8] that Workday acted with malice.[9] In support, Workday relies on

Raboin's deposition testimony, where he stated that he has "no evidence" that "anybody at

---

[8] There appears to be an unresolved question on whether a federal court, when state law provides the rule of decision, evaluates a motion for summary judgment under a higher standard when state law requires "clear and convincing" evidence for a claim, damage theory, or affirmative defense that has been moved against. Oregon state courts do not use a higher burden, but federal courts do, at least when federal law (including federal constitutional law) is at stake. The unresolved issue is whether this rule is procedural or substantive.

"Oregon courts do not determine summary judgment with the 'clear and convincing' evidence standard in mind." *Balzer v. Moore*, 293 Or. App. 157, 163 (2018) (quoting *Mason v. BCK Corp.*, 292 Or. App. 580, 587 (2018)). A federal court in this district, however, concluded that it must view a state law claim for punitive damages "through the lens of the standard of clear and convincing evidence." *Thompson ex rel. Thorp Fam. Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1170 (D. Or. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)). *Anderson*, however, did not involve a state law claim of punitive damages. Instead, the Supreme Court directed a higher standard of proof, including at summary judgment, based on First Amendment considerations in a case of a public figure suing for libel. The district court in *Thompson* cited *Anderson* but did not analyze the question under *Erie*.

Under the *Erie* doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural rules." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015). If the Oregon rule cited above is substantive—that is, if it is "outcome determinative"—this Court should apply it. *See id.* at 555. A rule is outcome determinative for *Erie* purposes if it would "significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court[ ]." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

Ninth Circuit precedent suggests that the clear and convincing evidence standard might apply in this case. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 998-99 (9th Cir. 2006) (holding district court did not err in weighing evidence at summary judgment under California punitive damages law and that "limited weighing of the evidence is a natural component of determining whether a jury could have reasonably found punitive damages appropriate under the heightened clear and convincing evidence standard"). *But see id.* (no discussion of *Erie* or conflict between state and federal standards; merely citing *Anderson*, 477 U.S. at 254-55, which pertains only to federal, indeed constitutional, law).

Here, however, the Court need not reach the question of whether the Oregon rule discussed above is substantive or procedural because Raboin raises a genuine issue as to punitive damages even under the clear and convincing evidence standard. The Court, of course, may revisit this issue by assessing whether Raboin has presented sufficient evidence at trial to submit the question of punitive damages to the jury.

Workday acted maliciously towards [him]." *See* ECF 94 at 41; ECF 104 at 39.[10] That Raboin

does not have personal knowledge of malice by Workday, however, does not foreclose other

evidence of malice. Indeed, Raboin, with the assistance of counsel, responded to an interrogatory

that asked him to state all facts upon which he based his claim for punitive damages by

presenting deposition testimony from Poplar, Paul, Gordan, as well as his own declaration.

Workday asks the Court to reject that evidence in favor of Raboin's deposition testimony,

arguing that a party "cannot attempt to create an issue of fact by contradicting his own

unfavorable deposition testimony, given under oath, with his interrogatory responses that were

prepared with the assistance of counsel." *See United States v. Goldsmith*, 541 F. Supp. 3d 1058,

1079 (S.D. Cal. 2021). Raboin, however, is not "fabricating a contradiction" with his own

deposition testimony or interrogatory answers, especially because much of the evidence he relies

upon is deposition testimony from Workday's own employees.

Further, the standard for punitive damages in Oregon is that Workday acted with "malice

*or* has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and

has acted with such a conscious indifference to the health, safety and welfare of others." *Van*

*Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1108 (D. Or. 2000)

(emphasis added) (quoting ORS 31.730(1)). Workday did not ask, and Raboin did not testify,

about Raboin's opinion as to Workday's reckless indifference. Looking at the evidence

previously discussed, Raboin has raised a genuine issue whether Workday acted with malice or

---

[9] Workday also argues that Raboin cannot obtain punitive damages on a negligence
theory. As discussed further in the context of Raboin's cross-motion, the cat's paw theory does
not transform Raboin's whistleblower retaliation claim into a negligence action.

[10] This testimony is not in the record; Workday's provided citation does not include it.
Raboin, however, includes the same quoted testimony in his brief, so the Court has no question
as to the veracity of the reference to that testimony.

reckless indifference. Viewing the evidence in the light most favorable to Raboin, a reasonable jury could conclude that he was fired in part because of retaliatory reports made by Poplar. These reports were not meaningfully investigated by Ames or Paul. A reasonable jury could find that these layers of investigatory failure, despite Raboin's positive formal employee reviews before the negative reports, shows reckless indifference on Workday's part. The Court, of course, recognizes that this is not the only conclusion that a reasonable jury could reach, but when considering Workday's motion for summary judgment, the Court must view the evidence in the light most favorable to Raboin.

**B.  Raboin's Partial Motion for Summary Judgment**

Raboin moves for partial summary judgment on two grounds. First, Raboin asks for a determination that he engaged in protected activity under ORS 659A.199. Second, Raboin argues that Workday's contributory negligence defense fails as a matter of law, because Raboin's only claim against Workday is predicated on intentional (not negligent) conduct. Although triable issues of fact exist with respect to the first ground, summary judgment is warranted on the second.

**1.  ORS 659A.199**

For the reasons previously discussed, there is a dispute of fact with respect to whether Raboin engaged in a protected activity. Viewing the evidence in the light most favorable to Workday, a reasonable jury could conclude that Raboin's reporting was not made in good faith because it was intended to distract from his own workplace misconduct or because Raboin knew that he was reporting only violations of HR policies and not violations of law. Thus, the Court denies this portion of Raboin's cross-motion.

**2.  Comparative Fault**

The Court, however, grants the portion of Raboin's motion regarding Workday's

affirmative defense of comparative fault. Because ORS 659A.199 prohibits only intentional misconduct, not negligence, Workday's comparative fault defense fails as a matter of law.

Under Oregon law, a comparative fault defense prevents a negligent plaintiff from recovering his percentage fault of damages. *See* ORS 31.600(1), (2) ("The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought" and "any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant."). This statutory affirmative defense can be asserted in all damages actions in which the defense of contributory negligence could have been asserted at common law. *See Johnson v. Tilden*, 278 Or. 11, 17 (1977) ("Apportionment of damages [in ORS 31.600] is expressly extended to all actions to recover damages for injury to persons or property in which contributory negligence may properly be asserted as a defense." (quoting Minutes, House Judiciary Committee, May 28, 1975, Appendix G (written statement by Rep. Dave Frohnmayer))); *State v. Gutierrez-Medina*, 365 Or. 79, 85 (2019) (quoting same; holding that "the legislature did not intend to create any defense that did not otherwise exist").

Raboin and Workday agree that the availability of comparative fault here hinges on whether the defense would have been available to Workday if this case were brought at common law. A contributory negligence, or comparative fault, defense is "not recognized" at common law when "the defendant's conduct [was] actually intended to inflict harm upon the plaintiff." *See Cook v. Kinzua Pine Mills Co.*, 207 Or. 34, 42 (1956) (quoting Prosser on Torts, 2d ed., § 51); *see also Gutierrez-Medina*, 365 Or. at 84 ("[T]he common law defense . . . was not available to a defendant who acted with a culpability greater than what the common law considered to be gross negligence—conduct that was either 'wanton' or intentional."); *Falls v. Mortensen*, 207 Or. 130, 134 (1956) (jury instruction that "contributory negligence is no defense to an action based upon a

defendant's wanton disregard of the rights of others" was "undoubtedly correct").

The parties also agree that Raboin's cause of action at common law would be a claim of wrongful discharge. An employee fired "for exercising a job-related right" or "for complying with a public duty" has a cause of action for wrongful discharge. *Sheets v. Knight*, 308 Or. 220, 230-31 (1989), *abrogated on other grounds*, *McGanty v. Staudenraus*, 321 Or. 532 (1995). In *Hirsovescu v. Shangri-La Corp.*, the Oregon Court of Appeals rejected a statutory defense to a claim of wrongful discharge. *See* 113 Or. App. 145, 148 & n.3 (1992). The court explained: "If [the employer] wrongfully discharged [the] plaintiff, [the employer] committed an intentional tort, not simple negligence"; thus, the statute, which applied only to negligent conduct, did nothing to "shield defendants from liability." *Id.* at 148.[11] Because wrongful discharge is an intentional tort, contributory negligence is not a defense at common law. *See Cook*, 207 Or. at 42-43. Accordingly, Workday cannot raise comparative fault.

Resisting that conclusion, Workday argues that comparative fault may still be used against Raboin's claim of an intentional tort because Raboin's "cat's paw" theory of employment discrimination embraces negligence principles. The Court disagrees. As explained above, Raboin must "establish a causal link" between his protected complaints on the one hand and Workday's "adverse employment actions, on the other" to prevail on his claim for whistleblower retaliation. *Rohrer v. Oswego Cove, LLC*, 309 Or. App. 489, 497 (2021) (cleaned up); *see also Crosbie v.*

---

[11] Nor do the common law defenses that were discussed in *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958), shield Workday from liability. Workday cites *Kernan* for the proposition that "at common law the liability of the master to his servant was founded wholly on tort rules of general applicability and the master was granted the effective defenses of assumption of risk and contributory negligence." ECF 109 at 30 (quoting *Kernan*, 355 U.S. at 431). That case says nothing, however, about whether assumption of risk and contributory negligence are available as affirmative defenses against even a master's intentional torts or for any tort not sounding in negligence.

*Asante*, 322 Or. App. 250, 258 (2022) (The "ultimate inquiry . . . in an employment retaliation case is whether an employee's protected trait or activity was a substantial factor in the adverse employment decision."). The cat's paw theory is just one way to prove causation. It does not convert an intentional tort to one sounding in negligence.

Oregon recognizes the cat's paw theory because "most employers are organizations, which can only act through their agents." *See Crosbie*, 322 Or. App. at 258. As the Oregon Court of Appeals explained:

> Showing that the decision-maker was influenced by a biased subordinate is one way that a plaintiff may establish a causal relationship between a protected trait or activity and an adverse employment action. Thus, the "cat's paw" instruction provides "a pathway for satisfying the causation requirement" in the limited circumstances where a biased employee influenced an unbiased decision-maker to make an adverse employment decision. The plaintiff must still establish that "the requisite causal connection exists between the supervisor's bias and the adverse employment action." To the extent that the term "imputing" bias is helpful when determining that a biased employee influenced an unbiased decision-maker's decision, the "cat's paw" instruction has been adopted in Oregon for that purpose.

*Id.* (quoting *Ossanna*, 365 Or. at 210, 211) (citations omitted). Thus, "the propriety of a cat's paw instruction hinges on whether a biased employee held influence over the adverse employment decision." *Id.* at 259. In *Crosbie*, the Oregon Court of Appeals explained two ways in which a biased employee might gain that influence: "either because the employee was authorized by job duty to do so or because the employer *negligently* allowed such usurpation" of power over the employment decision. *Id.* (emphasis added).

Raboin's First Amended Complaint could be read to reflect *Crosbie's* negligence

causation theory. *See* ECF 53 ¶ 49.[12] Workday then seizes on that allegation,[13] suggesting that Raboin's cat's paw theory is a "Trojan Horse" designed to lower the liability threshold from intentional misconduct to negligence. Raboin, however, states that his "reference to negligence . . . relates not to the basis for the cause of action but to the issue of causation." ECF 117 at 14. Raboin's explanation, albeit a bit confusing, comports with the discussion in *Crosbie*. There, the Oregon Court of Appeals references negligence only in the context of how a corporate defendant can assume a "biased retaliatory motive" (*i.e.*, intent) of its employee. *See* 322 Or. App. at 254, 259. Whistleblower retaliation does not become a tort sounding in negligence just because the plaintiff imputes the necessary scienter onto a corporate defendant. *Cf. In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015) ("Of course a corporation can only act through its employees and agents and can likewise only have scienter through them" (cleaned up)). Raboin cannot prevail under a cat's paw theory unless he proves that someone at Workday acted upon a retaliatory intent against Raboin and that this intentional misconduct ultimately played a substantial factor in Workday's termination of Raboin's employment. *See Ossanna*, 365

---

[12] That paragraph reads: "Laquinta Buford-Poplar harbored a retaliatory animus against Mr. Raboin based upon his statutorily protected complaints. This retaliatory animus was shared by Ms. Ames, Ms. Gordon and/or Ms. Paul and influenced Ms. Paul's decision to include Mr. Raboin in the layoff, *or Workday was negligent in allowing retaliatory animus to infect the layoff decision-making process*." ECF 53 ¶ 49 (emphasis added).

[13] In arguing that Raboin is pursuing a negligence theory, Workday also points to Raboin's witness disclosures. Raboin's expert witness disclosures identify an "expert report" of an Oregon employment attorney, Ms. Amanda Gamblin, who has disclosed testimony regarding the workplace "standard of care" for "reasonable employer[s]." *See* ECF 109-15 at 3, 22. Pointing to that potential testimony, Workday argues that Raboin "specifically asserts that Workday is liable based on a negligence theory." ECF 109 at 32. If Workday believes that Ms. Gamblin's proffered expert testimony is irrelevant to cat's paw causation (or confuses the issues or is otherwise inadmissible), the proper way to address that issue is to file a motion in limine to exclude that testimony (or timely object at trial). That a potential expert witness has disclosed potentially inadmissible testimony regarding a potentially irrelevant standard of care does not transform an intentional tort into one sounding in negligence.

Or. at 214-15 (one element of cat's paw theory is "a biased intent to cause an adverse

employment action"). Thus, comparative fault is unavailable.

Regardless, it appears that Workday's concern will be obviated if the Court does not use

the word "negligence" when instructing the jury about causation. The Court does not anticipate

doing so—nor does it appear to be required by law, given the retaliation instruction approved by

the Oregon Supreme Court in *Ossanna* that does not use the word "negligence" or even any

negligence concept. *See* 365 Or. at 213 (reprinting instruction and holding that it "was a correct

statement of the law"). If, however, after the parties submit their motions in limine and proposed

jury instructions, it were to appear that the Court is required to use the word "negligence" in its

instructions regarding causation, the Court would allow Workday to seek reconsideration of the

Court's decision excluding Workday's affirmative defense of comparative fault.[14]

## CONCLUSION

The Court DENIES Workday's Motion for Summary Judgment, ECF 94, and GRANTS

IN PART and DENIES IN PART Raboin's Motion for Partial Summary Judgment, ECF 100.

**IT IS SO ORDERED**.

DATED this 20th day of January, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[14] Further, it is unclear how a plaintiff employee could ever contribute to the negligence described in *Crosbie*. A defendant employer's "negligence" is only considered in *Crosbie* insofar as it enables a co-employee to usurp power over the alleged adverse employment action taken against the plaintiff. *See* 322 Or. App. at 259-60 ("[I]f the biased employee is not authorized to take an action, such as influence an employment decision, but is nevertheless enabled to do so by the employer's negligence or recklessness, the employer is also traditionally liable."). Thus, *Crosbie* does not appear to be relevant to the pending lawsuit.